CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 28 2005

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GARRY F. STOOTS, | ) | Civil Action No. 7:04CV00531 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| WERNER CO. | ) | By: Hon. Glen E. Conrad |
| | ) | United States District Judge |
| and | ) | |
| R.D. WERNER CO., INC. | ) | |
| Defendants. | ) | |

This matter is before the court on the parties' cross motions to exclude expert testimony and for summary judgment. The parties have submitted briefs and presented oral argument on these motions, which the court has considered. For the reasons stated below, both motions will be denied.

**Factual and Procedural Background**

On September 18, 2001, plaintiff Garry F. Stoots suffered injuries as a result of a fall from a ladder manufactured by the defendant, Werner Co. Stoots brought suit against Werner Co. and R.D. Werner Co., Inc. in the Circuit Court for the County of Pulaski on theories of negligent design and manufacture, breach of the implied warranties of merchantability and fitness for a particular purpose, breach of express warranties, and failure to warn. The defendants properly removed the case to this court pursuant to 28 U.S.C. § 1446(a) on the grounds of diversity of citizenship.

The plaintiff and defendants each located expert witnesses to render opinions on the scientific evidence involved in this case. In particular, Stoots' experts are Kathleen L. Rohr, Norman E. Dowling, Ph.D., Charles F. Reinholtz, Ph.D., and Lewis C. Barbe. Defendants Werner Co. and R.D. Werner Co., Inc. offered Charles R. Manning, Jr., Ph.D. and Frederick J. Bartnicki as their expert witnesses. Both sides have filed motions to exclude the testimony of the opposing party's experts.

Concurrent with the motion to exclude the expert testimony of plaintiff's designated experts, Ms. Rohr, Dr. Dowling, and Dr. Reinholtz, the defendants filed a motion for summary judgment. This motion is largely dependent upon the court's finding that the plaintiff's experts' testimony should be excluded under the Supreme Court holding in Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993).

## Discussion

When evaluating motions to exclude expert opinions, the court examines the proposed testimony to determine whether "[t]he proponent of the testimony [has] establish[ed] its admissibility by a preponderance of proof." Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001). In analyzing the testimony, the court considers the factors enumerated in Daubert: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. See Daubert, 509 U.S. at 592-94. As explained by the United States Supreme Court ruling in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the court is not limited solely to these factors. Id. at 150. Mindful that "the objective of Daubert's gatekeeping requirement is to 'make certain that an

expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field,'" the court now turns to the dueling motions in this case. Cooper, 259 F.3d at 200 (citing Kumho, 526 U.S. at 152).

Plaintiff's Motion to Exclude

The plaintiff submitted a motion to exclude the expert testimony of Dr. Charles R. Manning, Jr. and Frederick J. Bartnicki. Dr. Manning is a private consulting engineer and Mr. Bartnicki is a senior engineer with Werner Co. whose responsibilities include design and development work and supervision of engineers and designers. The plaintiff's chief argument in support of his motion to exclude the testimony of these two witnesses is that their opinions are speculative and in reaching their conclusions, Dr. Manning and Mr. Bartnicki did not conform their testing to the facts of the case.

Stoots argues that because Dr. Manning dismissed the testimony of eyewitnesses as descriptive of a physically impossible event, and proceeded to conduct tests consistent with his understanding of the physical evidence, his testimony fails to reliably apply scientific principles and methods to the facts of the case. See Fed. Rule Evid. 702. The objectionable testing that Dr. Manning performed consisted of dropping the ladder thirteen times on its side, ultimately causing the rung to disengage. Stoots objects that there is a dearth of evidence to show that he dropped his ladder in the manner in which Dr. Manning did during his testing. It may be that Stoots did not in fact drop his ladder. However, as Dr. Manning noted, "that ladder's heavy, it's cumbersome, they get away, and they can fall. And we knew that if you dropped that ladder on the side, it could put a load on the rung." Deposition of Charles R. Manning, Jr., p. 78, l. 14-17 (reciting that a "letter from the fellow from ... Sprint" indicated that their ladders took the occasional spill in the course of business).

3

In making this argument of unreliability due to failure to utilize the facts of the case, the plaintiff discounts Dr. Manning's statement that "[t]he piece of evidence I have is the rung was out. There's no way you can get the rung out on that ladder unless you get a high side load. That—that's a physical fact...." Deposition of Charles R. Manning, Jr., p. 90, l. 17-20. Thus, it appears that Dr. Manning did in fact consider the facts of the case as presented to him and use them in conducting his tests. The fact that he did not choose the precise set of facts that the plaintiff finds probative does not diminish the reliability of his testimony under the principle established by Rule 702.

The admissibility of Bartnicki's testimony is challenged by the plaintiff on similar grounds. The plaintiff asserts that Bartnicki's assumption of damage to the ladder prior to the accident is based on facts contrary to those identified by eyewitnesses, and therefore renders his testimony unreliable. Bartnicki personally performed no tests on either the subject ladder or an exemplar, but he did inspect the subject ladder and review the reports of the plaintiff's experts, as well as exhibits produced by Werner in response to discovery requests. Expert's Report of Frederick J. Bartnicki, p. 1. As with the argument against Dr. Manning's testimony, however, the court is constrained to find that Mr. Bartnicki's testimony complies with Rule 702.

<u>Defendant's Motion to Exclude</u>

The defendants move to exclude the expert testimony of Kathleen L. Rohr, Norman E. Dowling, Ph.D., and Charles F. Reinholtz, Ph.D. chiefly on the grounds that none of them has done any significant testing of either the ladder in question or an exemplar. The defendants argue that all three of these experts based their conclusions on the existence of space between the rung and the ferrule and that this mode of analysis is scientifically unsupportable.

4

Rohr is a metallurgist and chemist. She wrote a report for Stoots indicating her conclusion that the "deformation process did not reliably produce a sound joint and that the joint failure which occurred on the Stoots ladder was a consequence of normal use." Kathleen L. Rohr, Evaluation of Rung-to-Rail Joints in the Stoots Ladder, A Werner Electro-Master D7128-2 Mk-10 (May 30, 2005). The court recognizes that the Fourth Circuit has agreed that an expert who "appears to be an accomplished metallurgist, but [who] lacks knowledge of the aerosol can manufacturing process, the process of filling aerosol cans, the testing performed on cans during the manufacturing process prior to their distribution, the pressurization of the can, or the normal pressure expected of this type of can," was properly excluded in a case involving the explosion of an aerosol can. Free v. Bondo-Mar-Hyde Corp., 25 Fed. Appx. 170, 172 (4th Cir. 2002) (unpublished). However, to the extent that Rohr's testimony was based on scientific testing she conducted by grinding and polishing the Rung 6 joint ends and using dye penetrant testing to enhance the presence of defects, her testimony can be differentiated from that offered in Free, where "[t]he expert's opinion was based on his *assumptions* of what caused the can to explode rather than on scientific, technical, or other specialized knowledge." Id. at 172 (emphasis added). Rohr's testimony, although not exclusively devoted to metallurgy, is based on accepted scientific processes for evaluating the surface of items such as the ladder rung at issue.

Dr. Dowling is a professor of engineering science and mechanics at Virginia Polytechnic Institute and State University (VPI). He opined that "[t]he connections of the rungs to the plates, which were in turn riveted to the side rails, were made in such a manner that the rung could slide out of its connection if it became loose due to normal long term use of the ladder." Norman E. Dowling, Report of Opinions on Stoots v. Werner Co. (May 24, 2005). Dr. Reinholtz is a mechanical engineer and professor at VPI. His conclusion was similar to those of Ms. Rohr and

5

Dr. Dowling in that he determined that "the accident to Mr. Stoots and the failure of the ladder were the result of a defective design that relied on friction to retain the rung in the ferrule and rung plate." Charles Reinholtz, Stoots Ladder Failure Investigation (May 30, 2005).

The defendants object to the use of these experts' testimony on the grounds that none of them has done any significant testing of either the ladder in question or an exemplar. Citing Oglesby v. General Motors Corp., 190 F.3d 244 (4th Cir. 1999), the defendants assert that the experts have not made a sufficiently thorough investigation of the subject ladder or an exemplar to comply with either Daubert or Kumho. Id. at 250 ("[The expert] admitted, however, that he did not know they type or composition of the plastic. He did not ask the manufacturer; he did not analyze the part; he did not test it; he did not apply any calculations."). Unlike the situation in Oglesby, the plaintiff's experts based their opinions on more than a cursory examination and they did not find themselves caught in the embarrassing position of having incorrectly identified the material from which the part in question was manufactured. Id. at 248. Nor has the defendant asserted that the plaintiff's experts have failed to offer explanations as to why alternative causes of the accident could not have been the sole cause. Id. at 250; Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 202 (4th Cir. 2001) ("Thus, if an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony.").

The decision in Alevromagiros v. Hechinger Co., 993 F.2d 417 (4th Cir. 1993) does not alter the analysis here. The experts in this case did not render purely speculative opinions that are unsupported by any evidence. Id. at 422. On the contrary, they relied upon test data and relevant literature in the field in forming their opinions. Where an otherwise qualified expert "review[s] published reports, inspect[s] the product at issue, and perform[s] tests on the product," that

6

expert's opinion will be admitted to help clarify matters outside the realm of everyday experience for the jury. Lamonds v. General Motors Corp., 1998 WL 372633, at *2 (W.D. Va. June 25, 1998).

Evaluating the expert testimony offered by the plaintiff in light of Daubert, Kumho, and Fourth Circuit precedent, the court finds that Ms. Rohr, Dr. Dowling, and Dr. Reinholtz propose to testify to scientific knowledge that will assist the jury to understand or determine a fact in issue. Daubert, 509 U.S. at 592.

Evidence of Absence of Similar Accidents

The plaintiff submits that evidence of a lack of similar accidents involving the Werner ladder should be excluded on the grounds that it would be prejudicial and misleading. In particular, the plaintiff asserts that the Virginia evidentiary rule which requires exclusion of evidence of a lack of similar accidents should be employed in this case. As a general rule, the "Federal Rules of Evidence, as validly enacted procedural rules, govern in diversity cases." Hottle v. Beech Aircraft Corp., 47 F.3d 106, 109 (4th Cir. 1995). Where the Federal Rules and state policies collide, the Fourth Circuit has interpreted Erie R.R. v. Tompkins, 304 U.S. 64 (1938) and its progeny to require that "a state procedural rule must be followed in a diversity case if it is 'intimately bound up with the state right or obligation.'" DiAntonio v. Northampton-Accomack Mem'l Hosp., 628 F.2d 287, 291 (4th Cir. 1980) (holding that the notice provision of Virginia's medical review panel statute is substantive law). More recently, in Hottle, the Fourth Circuit noted that "application of the federal rule of evidence, although beyond argument procedural, may encroach upon a State's substantive law," and therefore, in some situations it may be necessary to give effect to the state law. Id. at 110. Such a situation is not presented here.

7

Although it is clear that "[i]n Virginia ... we are committed to the proposition that evidence of the absence of other injuries is not admissible when timely objection is interposed to it,"the plaintiff has not shown that this rule is closely tied to a substantive state policy. Sanitary Grocery Co. v. Steinbrecher, 183 Va. 495, 500, 32 S.E.2d 685 (1945); Hottle, 47 F.3d at 109.[1] In fact, the plaintiff cannot make such a showing. As the Fourth Circuit stated in Banko v. Continental Motors Corp., "[t]he rationale for the rule is that 'such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice and mislead them ....'" 373 F.2d 314, 316 (4th Cir. 1966) (quoting Moore v. City of Richmond, 85 Va. 538, 8 S.E. 387 (1888). This particular basis does not embody a substantive policy that is not already provided for in the Federal Rules of Evidence.

The consequence of applying the Federal Rules in this case is that the evidence of an absence of similar accidents must be admitted. Under Rules 402 and 403, relevant evidence is to be admitted unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The evidence that the defendants seek to admit here is certainly probative on the subject of whether they had notice of the alleged defect. The plaintiff's objection that the evidence shows only that there have been no *reported* rung pull-outs, and therefore may create a false impression that no other pull-outs have occurred, is well taken, however, the court does not assume that the jury will fail to follow instructions limiting consideration of the evidence to the issue of the defendants' notice.

---

[1] The court recognizes that as recently as 1999, the Virginia Supreme Court characterized the Virginia rule as "well-established." Wood v. Woolfolk Properties, Inc., 258 Va. 133, 138, 515 S.E.2d 304 (1999). However, the relative longevity of the rule does not diminish the fact that it is unsupported by a unique state substantive policy.

8

Motion for Summary Judgment

The defendants assert two principal arguments in support of their motion for summary judgment. First, they contend that the plaintiff's experts are unreliable because they did no testing and have no experience with ladder design or manufacture. Second, the defendants argue that the ladder showed signs of misuse or abuse and that the plaintiff has not produced evidence of a failure to warn.

The principal premise of the defendants' motion for summary judgment is that none of the plaintiff's experts' opinions are admissible, and therefore, there is no genuine issue of material fact. See May v. Dover, 845 F. Supp. 377, 381-82 (E.D. Va. 1994). However, as was explained at oral argument, the defendants characterize the same procedure used by their experts as "testing" while denying that it qualifies as "testing" when done by the plaintiff's experts. Moreover, in reaching their opinions, the plaintiff's experts reviewed relevant literature and relied upon other commonly accepted sources in the fields of metallurgy and engineering.

Contrary to the tenor of the defendants' arguments, there is no per se testing requirement for experts. The mere fact that the plaintiff's experts failed to perform testing in a manner that was satisfactory to the defendants does not compel the conclusion that their opinions do not meet the qualifications for expert testimony.

Because the court now declines to exclude the plaintiff's experts, there remains a genuine issue of material fact such that a grant of summary judgment would be inappropriate. This case is similar to that in Lamonds,1998 WL 372633, at *1. In Lamonds, the plaintiff's experts were challenged by the defendant on the grounds that they failed to conduct sufficient testing and that the tests they did perform employed faulty methodology. Id. at *2. The Court noted the parties' agreement that the plaintiff's experts had "consulted studies, examined the allegedly defective

9

product, and performed various tests that they believe establish their theory of causation." Id. As a result, the Court determined that the "appropriate place for defendant General Motors to raise these issues [regarding insufficiency of testing] is at trial...." Id. The Court cited Freeman v. Case Corp., 118 F.3d 1011 (4th Cir. 1997) as support for denying summary judgment on these grounds. The opinion of the Court in Lamonds is instructive as to the appropriate outcome here. The defendants have not shown that the plaintiff's experts relied on nothing but their own subjective views in formulating their opinions. The fact that the plaintiff's experts did not perform certain testing procedures because they deemed them unnecessary does not preclude them from offering opinions based on sufficient facts, reliable principles and methods, and a reliable application of the principles and methods to the facts of the case. Consequently, the motion for summary judgment will be denied.

## Conclusion

For the foregoing reasons, the cross-motions for exclusion of expert testimony and motion for summary judgment will be denied.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

DATED: This 28th day of December, 2005.

/s/ Glen E. Conrad

United States District Judge